**Richard GALLEGOS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–88–01145–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 24, 1989.

Steve Hebert, Steve Hebert & Associates, Baytown, for appellant.

Michael R. Little, Dist. Atty., Terry Breen, Asst. Dist. Atty., Anahuac, for appellee.

Before EVANS, C.J., and DUNN and MIRABAL, JJ.

DUNN, Justice.

The trial court convicted appellant of the third degree felony offense of possession of more than four ounces of marijuana. Punishment was assessed by the court at five years in the Texas Department of Corrections.

Appellant raises two points of error on appeal: (1) there was insufficient evidence linking him to the contraband found in the vehicle trunk; and (2) State's exhibits two, three, four, and five should not have been admitted into evidence because of lack of proof of a proper chain of custody.

According to the testimony of Texas Highway Patrol Trooper Poerner, on February 28, 1988, at approximately 9:00 p.m., he and his partner, Trooper Bean, observed a red Buick speeding eastward on I-10 in Chambers County. Radar verified the speed to be 73 miles per hour, which was in excess of the legal posted speed limit. They pursued the vehicle in their marked patrol car, and directed the driver to pull over, which he did. The driver, appellant Gallegos, did not get out of the car, so Poerner approached him and asked him to do so. Poerner questioned appellant concerning his reasons for speeding. During the interview, Poerner noticed an odor of burnt marijuana on appellant's breath.

According to the testimony of Bean, he waited at the rear of the Buick until appellant got out. Then Bean inspected the vehicle, and asked the female passenger for identification. Bean noticed a marijuana seed on the floorboard on the passenger side. He also stated he smelled the odor of burnt marijuana and raw marijuana emanating from the vehicle. Bean informed Poerner of his observations, and Poerner attempted to get appellant to sign a "consent to search" form.

Both Poerner and Bean testified that appellant said if they wanted to look in the car they should go ahead. By his gestures and words he declined to sign the form. The passenger was asked to step out, and she and appellant waited at the rear of the vehicle, watched by Poerner, while Bean conducted a search. Bean found a burnt marijuana butt in the ashtray. He then took the keys from the ignition and opened the trunk. The trunk contained a large bag with what appeared to be four or five pounds of marijuana in it. Officer Poerner testified that, just as they found the bag in the trunk, appellant "kind of hung his head down and shook his head. Then he [appellant] turned towards the other female defendant [passenger] and said—he stated, I'm sorry Debra. I didn't mean to get you in this kind of trouble or any kind of trouble." Officer Poerner said appellant began crying at that point.

Appellant and his passenger were arrested, read their rights, and handcuffed. Poerner drove them in the patrol car to the Chambers County Sheriff's Office, and Bean drove the Buick.

Poerner testified that an inventory search of the vehicle was conducted at the

sheriff's office. The passenger's purse was found in the front seat of the Buick and searched. Among other things, it contained a small amount of raw marijuana in a plastic baggy and some hand-rolled marijuana cigarettes.

Poerner marked the large bag of marijuana, the burnt marijuana cigarette butt, the marijuana in the baggy, and the marijuana cigarettes as evidence with his initials and the date, and locked the evidence in his patrol car. The next day, February 29, he took it to the Department of Public Safety Lab in Houston and turned it over to a lab chemist, Snyder. He watched the lab chemist mark the same case number on each item of evidence along with the chemist's initials.

Appellant argues, in his first point of error, that the trial court erred in finding him guilty because there was insufficient evidence linking him to any contraband found in the trunk of the vehicle.

■ Where an accused is charged with unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband; and (2) that the accused knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988); *Nunn v. State*, 640 S.W.2d 304, 305 (Tex.Crim.App. 1982). Possession of the contraband need not be exclusive, and evidence that shows the accused jointly possessed the contraband with another is sufficient. *Martin*, 753 S.W.2d at 387; *Rodriguez v. State*, 635 S.W.2d 552, 553 (Tex.Crim.App. [Panel Op.] 1982).

Both Poerner and Bean testified that appellant and his passenger were the only occupants in the vehicle when it was stopped. Bean testified that he smelled both raw and burning marijuana in the car when he spoke to appellant's passenger who was sitting in the car, and that he noticed a marijuana seed on the floor of the passenger's side of the car. Based on his 10 years as a patrolman, Bean stated that he would not be able to smell raw marijuana emitting from a car if the only raw marijuana in the car was a small amount in

a baggie, such as was later found in the purse. He testified that four or five pounds of marijuana, however, can be smelled in the passenger compartment of a car even if it is in the trunk. Poerner testified that he smelled burnt marijuana on appellant's breath.

■ In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied*, —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex.Crim.App. 1984). To support a conviction for possession of a controlled substance, evidence must affirmatively link the accused to contraband in a manner, and to such an extent, that a reasonable inference may arise that the accused knew of the contraband's existence and whereabouts. *Martin*, 753 S.W.2d at 387; *Rodriguez*, 635 S.W.2d at 553. Examples of evidence providing such an affirmative link include evidence that: the accused owned the vehicle involved or was connected with the owner; the contraband emitted a clearly detectable odor; the accused was under the influence of drugs; the contraband was in close proximity to the accused; or the accused made incriminating statements at the time of the arrest. *See Meeks v. State*, 692 S.W.2d 504, 511–12 (Tex.Crim.App.1985); *Brazier v. State*, 748 S.W.2d 505, 508 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

■ We find that the testimony shows sufficient affirmative links between appellant and the marijuana in the trunk to support a conviction. Appellant had possession and control over the vehicle. Ap-

pellant's breath smelled of burnt marijuana, the odor of raw marijuana was apparent in the car, and a marijuana seed and a burnt marijuana "joint" were found in the car.

We distinguish this case from *Humason v. State*, 699 S.W.2d 922 (Tex.App.—Houston [1st Dist.] 1985), *aff'd*, 728 S.W.2d 363 (Tex.Crim.App.1987). In *Humason*, the State proved only that the accused was the vehicle's sole occupant and that the cocaine was found near him in an unzipped gym bag. In this case, appellant's breath smelled of marijuana, the smell of raw marijuana permeated the car, a marijuana seed and cigarette were found in the car, and appellant made an incriminating statement when the marijuana in the trunk was discovered. Such evidence amounts to more than a "strong suspicion" or "mere probability" that appellant exercised care, custody, control, or management of the contraband, and is sufficient evidence to link appellant to the contraband found in the trunk. *See Christopher v. State*, 639 S.W.2d 932, 935–36 (Tex.Crim.App. [Panel Op.] 1982); *Acosta v. State*, 752 S.W.2d 706, 708 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Brazier v. State*, 748 S.W.2d at 508; *Duncan v. State*, 680 S.W.2d 555, 560 (Tex.App.—Tyler 1984, no pet.).

We overrule appellant's first point of error.

In his second point of error, appellant contends that the trial court erred in admitting State's exhibits two, three, four, and five over his objections that the proper chain of custody had not been established. Exhibit two was the plant material inside the large bag found in the Buick trunk; exhibit three consisted of the burnt marijuana cigarette butt found in the ashtray; exhibit four was the loose marijuana and marijuana cigarettes found in the purse; and exhibit five was the large bag that contained the marijuana found in the trunk. Appellant complains that there was no testimony from McGeehon, the chemist who performed the analysis, that he received the exhibits from Snyder, who took the exhibits from Poerner. Appellant further complains that there was no evidence to

show that Snyder, after receiving the exhibits from Poerner, put them in a secure place from which they were removed by McGeehon.

McGeehon testified that when evidence is brought to the lab, it must be accompanied by an evidence submission form. He went on to state that one of the lab chemists receives the evidence, gives it a unique lab number, and places it into a secured area of the lab. According to McGeehon, only lab chemists have access to the secured area, and the evidence remains there until it is removed for analysis.

According to McGeehon's testimony, he ran the tests on the evidence bearing laboratory number L2H59995. This was the number assigned to the evidence left by Poerner on February 29, 1988. The test showed that the plant material in all items of the evidence was marijuana. When the tests were completed, McGeehon stated he repackaged the evidence, placed it in its original container, the large bag, sealed it, and placed it into the completed evidence vault at the lab. He confirmed that he retrieved the evidence the morning of the trial and brought it with him to court. McGeehon conceded that he did not see Poerner give the evidence to Snyder on February 29. However, he stated that he recognized Snyder's initials on the evidence.

■■■■ At the trial, Poerner was shown State's exhibits two, three, four, and five and properly identified them. If a substance is properly identified, most questions concerning care and custody go to the weight to be given the evidence, not its admissibility, absent a showing that the substance was tampered with or changed. *See Medellin v. State*, 617 S.W.2d 229, 232 (Tex.Crim.App. [Panel Op.] 1981); *Montgomery v. State*, 506 S.W.2d 623, 624 (Tex. Crim.App.1974); *Walker v. State*, 470 S.W.2d 669, 672–73 (Tex.Crim.App.1971); *Adams v. State*, 744 S.W.2d 622, 626 (Tex. App.—Fort Worth 1988, pet. ref'd); *Beck v. State*, 651 S.W.2d 827, 828–29 (Tex.App.— Houston [1st Dist.] 1983, no pet.). Where the State shows the beginning and the end of the chain of custody, any gaps in be-

tween go to weight rather than admissibility, particularly where the chain goes inside the laboratory. *Medellin,* 617 S.W.2d at 232; *Beck,* 651 S.W.2d at 829.

Poerner identified State's exhibits two, three, four, and five as those which he seized at the time of appellant's arrest, marked as evidence, and delivered to the lab, where he observed Snyder label and initial them. McGeehon testified about the general lab procedures for handling evidence and about his handling of State's exhibits two, three, four, and five from the time he took them from the secured area for analysis until he brought them to the trial. The record shows that the chain of custody goes through the door of the laboratory. Appellant makes no allegation that the evidence was tampered with or altered.

The determination of admissibility is within the sound discretion of the trial court. *Jackson v. State,* 575 S.W.2d 567, 579 (Tex.Crim.App.1979). The trial court's determination on admissibility will not be reversed on appeal unless a "clear abuse of discretion is shown." *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim.App.1986). We find that the trial court did not abuse its discretion in admitting State's exhibits two, three, four, and five because the State showed the beginning and the end of the chain of custody through the door of the laboratory and appellant did not argue that the exhibits had been changed.

Appellant's second point of error is overruled.

We affirm the judgment of the trial court.