Opinion issued May 22, 2003







 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00830-CR
____________
 
RICKEY CARTER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 904692
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Rickey Carter, guilty of possession with intent to
deliver cocaine weighing more than four grams but less than 200 grams. After
finding true the allegations in two enhancement paragraphs that appellant had two
prior felony convictions, the trial court assessed punishment at confinement for 40
years. In three points of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction and that the trial court abused its
discretion in denying his motion to suppress his oral statements. We affirm.
Facts
          On the night of March 6, 2002, Houston Police Officers Pierson and McCusker
drove to the Blue Top Hotel on Telephone Road in Houston, Texas. Officer Pierson
testified that he knew “there is a large amount of prostitution and narcotic-related
activity at that motel and we wanted to go there and see if we couldn’t find somebody
that was doing something illegal.” The officers first approached a woman, whom
they suspected was a prostitute, and they received information that there “were
narcotics dealings inside the motel.” 
          Upon receiving this information, the officers walked into the motel complex
and saw appellant standing in the doorway of one of the rooms. Officer Pierson
testified that as soon as appellant saw the officers, appellant “closed the door very
hurriedly and started walking toward us.” Pierson further testified that it “seemed to
us at the time that he was attempting to hide something.” Pierson saw a large bulge
that looked like a gun in appellant’s pocket, and Pierson then frisked appellant and
found a $700 roll of bills in small denominations. Pierson then asked appellant for
his identification, and appellant responded that he had to return to his motel room to
get his identification card. 
          The officers drove appellant in their patrol car back to his room. Officer
Pierson testified that appellant walked very quickly to his room to retrieve his
identification and he “quickly cracked the door, went inside, got his ID, closed the
door as though, from what I could see, he was trying to hide something.” Pierson
further testified that from the time appellant made contact with them, appellant was
wringing his hands, his hands were sweaty, his face was sweaty, he was not able to
speak clearly, and “he even stated to us that he was nervous.” Officer McCusker also
testified that appellant “started getting nervous,” his “hands started shaking,” “he
started sweating,” and “he was trying to walk away when we were trying to talk to
him.”
          After showing the officers his identification card, appellant stated that he was
nervous. Officer Pierson asked appellant why he was so nervous, and appellant
responded that “he was caught up in something.” Pierson asked appellant what he
was “caught up in,” and appellant stated that “he was smoking marijuana in his room
laced with cocaine.” Pierson testified that, “[o]nce he made his statement, I began to
question him about illegal activity and that’s when he told us that he had 4 or 5
ounces of cocaine in his room.”
          The officers then asked appellant for permission to search his motel room, but
told appellant that he was not required to consent to the search. Appellant orally
consented to the search, went inside the room with the officers, and then showed the
officers where the cocaine was hidden inside a drawer. Officer Pierson stated that
throughout the entire procedure appellant “was very forthright with us,” “[h]e did not
lie to us,” and “[h]e told us everything we needed to know without us having to do
much of anything.”
          Officer McCusker testified that he took custody of the cocaine, which consisted
of many small crack rocks and a large “cookie,” and that it field-tested postive for
cocaine. A Houston Police Department chemist, Kamika Reach, testified that the
cocaine weighed approximately 10.5 grams. 
Legal Sufficiency of the EvidenceIn his first point of error, appellant contends that the evidence was legally
insufficient to support his conviction for possession of cocaine because the State
failed to establish a chain of custody linking appellant to the cocaine.
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. Id.
          To establish unlawful possession with the intent to deliver a controlled
substance, the State must show (1) that a defendant possessed a controlled substance,
(2) that he knew he possessed a controlled substance, and (3) that he had the intent
to deliver the controlled substance. Tex. Health & Safety Code Ann. § 481.112
(Vernon Supp. 2003).
          Appellant contends that the State “failed to identify the cocaine” that appellant
allegedly possessed because Officer McCusker testified that he did not place any
identifying marks on the cocaine or the bag in which it was placed. Appellant argues
that “the chain of custody did not lead into the laboratory.” Appellant also argues that
the State never offered the bag and its contents into evidence. Appellant also notes
that although McCusker testified that he believed the substance to weigh 20 grams, 
the substance tested by the chemist weighed only 10.5 grams.
          If a substance is properly identified, most questions concerning care and
custody go to the weight to be given the evidence, not to its admissibility, unless there
is a showing that the substance was tampered with or changed. Gallegos v. State, 776
S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, no pet.). When the State
shows the beginning and the end of the chain of custody, any gaps in between go to
the evidence’s weight rather than its admissibility, particularly if the chain of custody
to the laboratory is shown. Id. at 315-16.
          In regard to admissibility of the cocaine, Officer McCusker testified that State’s
Exhibit No. 1, a small plastic bag, contained the cocaine seized from appellant, which
he recovered from the crime scene and took to “the southeast narcotics lock box.” 
McCusker stated that he might have put the small bag of cocaine “in a bigger baggie
[State’s Exhibit No. 2] and then placed it in this envelope which went to the lab.” He
stated that he sealed the cocaine in the packaging and then wrote the pertinent case
information on it. McCusker then testified that the cocaine at trial was “from the lab”
and that he had picked the cocaine up from the lab and brought it to court. McCusker
further testified that he remembered the “cream color” of the cocaine, “the smaller
baggie,” and the writing “received it from.”
          Kamika Reach, the chemist, testified that the cocaine “came from the envelope”
and that she opened the envelope herself. The record reflects that State’s Exhibit No.
2, which contained State’s Exhibit No. 1, had initials on it that did not belong to
Officer McCusker. The record further reflects that Reach testified that the unknown
initials were “my initials.” In addition, Reach testified that the discrepancy in the
weight of the cocaine was because the “20 grams is what the officer approximated
with the packaging” and that “[m]y weight, the 10.5 grams, only [sic] the weight of
the chunk, no packaging.”
          In this case, the evidence was sufficient to show the chain of custody from
seizure to the crime lab. As there was no evidence of tampering, any gaps caused by
Officer McCusker’s testimony went to the weight of the evidence, not its
admissibility. See id. Therefore, we hold the that the evidence was legally sufficient
to support appellant’s conviction.
          We overrule appellant’s first point of error.
Factual Sufficiency of the Evidence
          In his second point of error, appellant contends that the evidence was factually
insufficient to support his conviction because the trier of fact could not conclude
beyond a reasonable doubt that appellant intentionally and knowingly possessed
cocaine. 
          The factual sufficiency of the evidence is reviewed by examining all of the
evidence neutrally and asking whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).
          Under this point, appellant argues that “the substance that was lab tested and
entered into evidence as cocaine was not the substance the officer seized from the
defendant.” Thus, appellant argues that “the State’s evidence against him simply is
not credible enough to sustain a conviction.”
          The record reflects that when asked by the officers why he was nervous,
appellant responded that “he was caught up in something” and that “he was smoking
marijuana in his room laced with cocaine.” The record further reflects that appellant
then told the officers that “he had 4 or 5 ounces of cocaine in his room.” Appellant
gave the officers consent to search his room, went into the room with the officers, and
then showed the officers where the cocaine was located. Officer Pierson testified that
the many smaller rocks and the large “cookie” of crack cocaine indicated that
appellant did not possess the crack cocaine for personal use but possessed it with
intent to deliver. 
          Moreover, Officer McCuskey testified that the cocaine he seized from appellant
was the same cocaine introduced into evidence in State’s Exhibit No. 1. The chemist
also testified that this was in fact the same cocaine that she tested in the crime lab. 
          The evidence does not demonstrate that the proof of guilt was so weak as to
undermine confidence in the jury’s determinations or was greatly outweighed by
contrary proof. Thus, we hold that the evidence was factually sufficient to support
appellant’s conviction.
          We overrule appellant’s second point of error.
Motion to Suppress
          In his third point of error, appellant contends that “the trial court erred in
overruling [his] motion to suppress his oral statements as fruit of an illegal detention,
resulting in the violation of [his] rights under both federal and state constitutions.”
          Appellant argues that (1) the officers lacked reasonable suspicion to detain him
temporarily, (2) after appellant was patted down and returned with his identification,
there was no basis for a continued detention, and (3) appellant’s statements and
consent to search were tainted by the officers’ lack of reasonable suspicion.
          A trial court’s ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Spight v State, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st
Dist.] 2001, no pet.). We will afford almost total deference to a trial court’s
determination of facts supported by the record, especially when the findings are based
on the evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). Because we do not determine credibility, our de novo review
of reasonable suspicion, probable cause, consent, and mixed questions of law and fact
becomes a de novo review of legal questions. Spight, 76 S.W.3d at 765.
          Here, the trial court entered findings of fact and conclusions of law in support
of its judgment. In its findings, which are supported by the record, the trial court
found that appellant acted suspiciously when he first approached the officers,
appellant told the officers he was “caught up” in illegal activity, appellant admitted
to smoking marijuana laced with cocaine and possessing 4 or 5 ounces of cocaine,
and appellant voluntarily consented to a search of his room and showed the officers
where the cocaine was hidden. In its conclusions of law, the trial court concluded
that appellant was not in custody at the time he gave his statement, appellant was not
placed in custody until the cocaine was seized, appellant’s inculpatory statements
were made freely and voluntarily, appellant was never subjected to custodial
interrogation, and appellant gave his consent to search freely and voluntarily.
Reasonable Suspicion
          An officer is permitted to make a temporary investigative detention of an
individual if the officer has reasonable suspicion that some activity out of the
ordinary is or has occurred, some suggestion to connect the detainee with the unusual
activity, and some indication that the activity is related to a crime. Terry v. Ohio, 392
U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968);


 Stone v. State, 703 S.W.2d 652, 654 (Tex.
Crim. App. 1986). The test for reasonable suspicion is a factual one and is made and
reviewed by considering the totality of the circumstances at the time of the detention. 
Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997).
          Regardless of the fact that a suspected prostitute directed the officers to the
back of the motel complex, it was appellant who initiated the contact with the officers
when he saw the officers in their patrol car. Officer Pierson noted a huge bulge in
appellant’s pants pocket, patted down the bulge, and discovered a wad of $700 in
bills of small denominations. Pierson then asked to see appellant’s identification. 
The record reflects that, based on their experience, the officers knew the Blue Top
Motel was a high crime area, which supported prostitution and narcotics-related
activity. Moreover, appellant’s possession of a large wad of bills in small
denominations, his nervousness, and his suspicious behavior while retrieving his
identification card gave the officers reasonable suspicion to detain appellant
temporarily until that suspicion was dispelled.
Scope of Detention
          Appellant contends that after he was patted down and returned with his
identification, there was no basis for a continued detention.
          An investigative detention must be temporary and last no longer than is
necessary to effectuate the purpose of the detention. Florida v. Royer, 460 U.S. 491,
500, 103 S. Ct. 1319, 1325 (1983); Davis, 947 S.W.2d at 245. Once the reason for
the detention has been satisfied, the detention may not be used as a “fishing
expedition for unrelated criminal activity.” Davis, 947 S.W.2d at 243. 
          The record reflects that, when appellant was asked to retrieve his identification,
appellant rushed to his motel room, closed the door very hurriedly, and locked the
door behind him. Officer Pierson testified that the large roll of bills in small
denominations was typical of what “I see on many other narcotics dealers.” Pierson
further testified that appellant’s behavior while he retrieved his identification
indicated “that [appellant] was trying to hide something.” Throughout the entire
encounter with appellant, the officers noted that appellant was sweating, wringing his
hands, and having difficulty speaking to them. 
          When appellant returned to the officers with his identification and Officer
Pierson asked him why he was so nervous, appellant admitted that he was “caught up
in something” and had been “smoking marijuana in his room laced with cocaine.” 
Under further questioning, appellant admitted that he had four to five ounces of
cocaine in his room. Thus, the record demonstrates that the officers’ reasonable
suspicion that appellant was involved in illegal activity increased during the course
of the detention and that the scope of the detention was not exceeded.
Consent
          Appellant contends that his oral statements and his consent to search his motel
room were “tainted” by a lack of reasonable suspicion. However, as noted above,
because the record demonstrates that the officers possessed reasonable suspicion to
detain appellant temporarily and that the scope of the detention was not exceeded, we
hold that appellant’s statements and his subsequent consent to search his motel room
were not tainted by an illegal detention. Thus, we further hold that the trial court did
not abuse its discretion in denying appellant’s motion to suppress his oral statements.
          We overrule appellant’s third point of error. 
 

Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Hedges, Jennings, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).