Opinion issued June 10, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00086-CR

———————————

Elvin Charles Boult, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 232nd District Court 

Harris County County, Texas



Trial Court Case No. 1090798

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Elvin Charles Boult of aggravated sexual assault of a child
and sentenced him to 30 years’ confinement in prison.  See
Tex. Penal Code Ann. § 22.021
(Vernon Supp. 2009).  In one issue, Boult
contends that the trial court abused its discretion by admitting testimony
regarding DNA testing because, he alleges, there was a gap in the chain of
custody of the buccal swab sample provided by him.

          We
affirm.

BACKGROUND

          Boult
dated the complainant’s mother for approximately two years before the incident
that led to this prosecution.  On
September 16, 2006, 13-year-old A.D. and her 14-year-old sister T.D. spent the
day with relatives.  When they returned
home between 8:00 and 9:00 p.m., they found Boult watching television with
their younger brother.  Although Boult
had been to their house with their mother, A.D. and T.D. both testified that he
had never before been there without her. 
Boult took all three children to a fast-food restaurant, bought food,
and returned home between 10:00 and 11:00 p.m. 
A.D. and T.D. went to their shared bedroom to eat and watch television
before falling asleep.

          A.D.
testified that, after T.D. fell asleep, Boult came into her bedroom, fondled
her, pulled down her shorts and underwear, and sexually assaulted her.  He then left the room to take a shower.  A.D. immediately woke her sister and told her
that Boult had raped her.  The girls fled
to an aunt’s house nearby, and their aunt called the police.  

          A.D.
went by ambulance to Texas Children’s Hospital, where she underwent a sexual
assault examination.  The sexual assault
nurse examiner (SANE) testified that she collected samples of A.D.’s hair and
blood and swabs from her mouth, vagina, and anal area.  In addition, the SANE took A.D.’s
clothing.  The SANE sealed the clothing
and the samples and placed the samples in a refrigerator accessible only to
other SANEs.  Within 24 hours, Houston
Police Officer J. Landrum picked up the sexual assault kit from Texas
Children’s Hospital and took it to the Houston Police Department (HPD) property
room, where it was tagged into evidence and secured.  

          On
April 9, 2007, D. Wine, a criminal investigator with the Harris County District
Attorney’s office, collected a buccal swab (a sample from the inside of the
mouth) from Boult, which Boult had voluntarily provided.  Wine sealed the sample and took it to HPD’s
crime laboratory.  R. Calvin, the
supervisor of the HPD crime lab’s “centralized evidence receiving,” initialed
the package before storing it. 
Approximately 13 months later, C. Pope, a senior evidence technician for
HPD’s crime lab, received the package. 
She testified that the package was “a sealed envelope and it was labeled
with evidence tape on it.  It had not
been tampered with.”  She testified that
she could tell it had not been tampered with because “the evidence tape was not
broken.”  Pope placed the package into
evidence storage.  Six days later, J.
Rehfuss, a criminalist for HPD’s crime lab, sent the package to Orchid
Cellmark, a private forensic laboratory in Dallas, Texas.  The package was sent by overnight courier
service.  A. Rogers, a forensic DNA
analyst for Orchid Cellmark, testified that when the evidence in this case was
received, the seals were intact and there were no signs of tampering. 

Rogers explained that evidence tape
is used “to ensure that the envelope stay[s] secure during transportation and
there’s no signs of tampering and just to make sure nobody has entered that
shouldn’t have.”  She testified that once
the evidence is tested, it is repackaged and more evidence tape is
affixed.  She said that the Orchid
Cellmark procedure also requires that the person opening the package record the
day the package was opened and the initials of the person who opened it.

          At
trial, A.D. testified that Boult sexually assaulted her, and her sister T.D.
testified that A.D. woke her up saying that Boult had raped her.  Rogers testified that the sperm fraction of
the samples taken from A.D.’s vagina and from her pants matched the DNA from
Boult’s buccal swab sample.  Rogers
testified that they concluded “in the absence of an identical twin” the “DNA
profile obtained from the sperm fraction[s]” of those two samples originated
from Boult.  

          Boult
objected twice to the admission of Rogers’s testimony, arguing that there was a
gap in the chain of custody. 
Specifically, his theory was that there was no testimony to explain an
extra piece of HPD evidence tape on the envelope containing Boult’s buccal swab,
which, he argued, must mean that the HPD crime lab opened the package and tampered
with the swab.  The trial court overruled
Boult’s objections and denied his request to strike Rogers’s testimony.  The State recalled Rogers who testified about
chain-of-custody issues but did not reiterate her findings or conclusions.

STANDARD OF REVIEW

We review
the sufficiency of an evidentiary predicate and the trial court’s decision to
admit or exclude evidence for abuse of discretion.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Smith v. State, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984); Foster v. State, 101 S.W.3d 490, 498
(Tex. App.—Houston [1st Dist.] 2002, no pet.).  A trial court abuses its discretion when it
acts without regard to guiding rules or principles.  Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  We review the trial court’s ruling in light of
what was before it when it ruled, Weatherred,
15 S.W.3d at 542, and we will uphold the trial court’s ruling if it is
reasonably supported by the record.  Willover v. State, 70 S.W.3d 841, 845 (Tex.
Crim. App. 2002).

CHAIN OF CUSTODY

          Absent
proof of tampering, questions regarding the chain of custody go to the weight
of the evidence presented at trial.  Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997); Gallegos v. State,
776 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, no pet.); accord Martinez v. State, 186 S.W.3d 59,
62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  When the State shows the beginning and the
end of a chain of custody, any intermediate gaps go to the weight rather than
the admissibility of the evidence, particularly if the chain of custody ends at
a laboratory.  Martinez, 186 S.W.3d at 62; Gallegos,
776 S.W.2d at 315–16.

          Wine testified
that he took a buccal swab from Boult, packaged and sealed it, and delivered it
to the HPD crime lab (central evidence receiving).  The package was then transferred to Pope, who
secured it in evidence.  Pope testified
that Rehfuss later shipped it to Orchid Cellmark for testing.  The State showed a complete chain of custody
for the buccal swab, which was used as a known sample of Boult’s DNA for
comparison against the sperm fractions obtained from A.D.’s clothing and
body.  Pope and Rogers both testified
that they saw no evidence of tampering.  

Boult contends that the unexplained HPD evidence
tape is circumstantial evidence of tampering. 
He also argues
that his case is analogous to Garner v.
State, 848 S.W.2d 799 (Tex. App.—Corpus Christi 1993, no pet.).  It is not. 
Garner had been furloughed from jail to attend a relative’s
funeral.  Id. at 800.  When he returned
to jail, he was under the influence of drugs, and the jailer found a syringe,
which contained a trace amount of liquid, hidden in his sock.  Id.
 The jailer put the syringe on the
sheriff’s desk, where it remained for approximately 60 to 90 minutes.  Id.  The sheriff tied an evidence tag around it
and kept it in a locked desk drawer for a week before mailing it to a
laboratory in Corpus Christi.  Id. at 801.  That lab conducted no testing.  Id.  “Approximately three weeks later, the DPS lab
sent [the sheriff] a box containing a syringe, but [the sheriff did] not
remember if it had an evidence tag on it.” 
Id.  That syringe remained locked in the sheriff’s
desk for 14 months until it was sent to another laboratory, which found trace
amounts of cocaine residue inside of it. 
Id.  The court of appeals reversed Garner’s
conviction because the State failed to prove a proper chain of custody for the
syringe.  Id. at 803.  The court held
that the State failed to prove that the syringe that was tested was the same
syringe the jailer seized from Garner after he returned from the funeral
because the syringe that was tested and admitted bore no identifying markings
or tags.  Id.  

Here, the buccal swab about which
Boult complains bore Boult’s name and Pope testified that HPD’s records showed
that Wine brought the package to HPD’s crime lab.  Boult’s case is more analogous to DeLeon v. State, 505 S.W.2d 288 (Tex.
Crim. App. 1974).  DeLeon was convicted for
selling heroin.  Id. at 288.  The evidence
showed that Officer Chevera purchased two balloons of heroin from DeLeon,
conducted a field test, sealed them in an envelope, and gave them to Officer
Cuellar.  Id. at 289.  Two days later,
Officer Cuellar delivered the balloons, still sealed in the envelope, to a
police chemist.  Id.  DeLeon contended that
the absence of testimony regarding the two days Cuellar possessed the evidence
rendered the evidentiary predicate insufficient.  Id.  The Texas Court of Criminal Appeals
disagreed, stating, “Absent a showing that the envelopes had been tampered with
or changed, appellant’s objection goes to the weight rather than the
admissibility of the evidence.”  Id. 


Boult contends that the presence of
additional evidence tape suggests that the buccal swab package was opened and
then resealed.  This speculation does not
demonstrate tampering with evidence.  The
relevant evidence was not the envelope itself but the contents of the envelope,
i.e., the buccal swab.  Evidence that the
envelope was opened and closed is not tantamount to evidence that the contents
of the envelope were altered in any way. 
Moreover, “[t]he State is not required to provide a moment-by-moment
account of the whereabouts of evidence from the instant it is seized until it
is introduced at trial.”  Reed v. State, 158 S.W.3d 44, 52 (Tex.
App.—Houston [14th Dist.] 2005, pet. ref’d).

Because there was no evidence of
tampering and because the State showed the beginning and end of the chain of
custody, which ended at a laboratory, any alleged gaps in the chain of custody
go to the weight of the evidence, not its admissibility.  See
Lagrone, 942 S.W.2d at 617; Gallegos,
776 S.W.2d at 315–16.  We conclude that
the trial court did not act without regard to guiding rules and principles, and
we hold that the trial court did not abuse its discretion by admitting Rogers’s
testimony regarding the DNA testing conducted in this case.  See,
e.g., Montgomery, 810 S.W.2d at
380.  We overrule Boult’s sole issue.

CONCLUSION

          We
affirm the judgment of the trial court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and
Massengale.

Do not publish. 
 Tex. R. App. P. 47.2(b).