**Affirmed and Memorandum Opinion filed August 19, 2014.**



In The

# Fourteenth Court of Appeals

---

NO. 14-13-00331-CR
NO. 14-13-00332-CR

---

**JOSEPH EDWARD SPILLERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 12CR0828 and 12CR0829**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Joseph Edward Spillers of burglary of a building and possession of a controlled substance with intent to deliver. Appellant entered a plea of true to two enhancement paragraphs. The trial court sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for five years for the burglary conviction and twenty-five years for the

possession conviction. The sentences were ordered to run concurrently. In each case, appellant filed a timely notice of appeal. We affirm.

## BACKGROUND

Sergeant Paul Hensley of the Santa Fe Police Department received a report that someone was taking scrap metal from an unoccupied building. As Sergeant Hensley approached the building, he saw an individual, later identified as appellant, exit the building with scrap metal and load it into the back of a pickup truck. After Sergeant Hensley spoke to the property owner on the phone, appellant was placed in custody for burglary of a building.

There was a passenger in the truck. Because the passenger did not have a valid driver's license the truck was scheduled to be towed. Prior to having the vehicle towed, Sergeant Hensley conducted a vehicle inventory. The inventory revealed a clear plastic bag holding eight smaller baggies, measuring one inch by one inch, containing small white crystals. Based on his training and experience, Sergeant Hensley believed the substance in the baggies to be methamphetamine. After appellant was read his rights, he told Sergeant Hensley they were his drugs.

## CHAIN OF CUSTODY

In his first issue appellant claims evidence of the methamphetamine seized from his truck should have been suppressed on the grounds the chain of custody was compromised. Appellant claims there is a seven-month "gap" in the chain of custody. The issue was raised in appellant's motion to suppress and following a pre-trial hearing the trial court denied that motion. The issue was relitigated at trial. The evidence was then admitted over appellant's objection that the State failed to establish the chain of custody prior to the lab's receipt of the substance.

2

In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, a trial court's ruling on a motion to suppress is not a final decree; it is an interlocutory decree that is subject to revision at any time before the trial ends. *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012). If the State raises the issue at trial, either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review. *Rachal,* 917 S.W.2d at 809. Accordingly, we consider all the evidence relevant to whether the State established the requisite chain of custody to admit the substance seized from appellant's truck.

It is within the trial judge's discretion to determine the sufficiency of a predicate, and, absent an abuse of discretion, we will not reverse the trial court's judgment. *Smith v. State*, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984). Without evidence of tampering or impropriety, most objections regarding breaks in the chain of custody go to the weight of the evidence, rather than its admissibility. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). Proof of the beginning and end of the chain of custody is sufficient; a proponent of evidence does not need to show a "moment-by-moment" account of the evidence to support its proper admission. *Shaw v. State*, 329 S.W.3d 645, 654 (Tex.App.—Houston [14th Dist.] 2010, pet. ref'd). *See also Caddell v. State*, 123 S.W.3d 722, 727–28 (Tex.—App.Houston [14th Dist.] 2003, pet. ref'd) (holding testimony by a lab official explaining the evidence was sealed and properly labeled to show it was the substance seized by officers established the chain of custody, even when nobody testified to transporting the evidence to the lab).

At the pre-trial hearing on appellant's motion to suppress, defense counsel argued the substance seized from the truck had been lost or misplaced according to the State's motion seeking a continuance to have the substance tested. Brandon Simms, Assistant District Attorney for Galveston County District Attorney's Office, informed the trial court that his motion for continuance stating the substance had been "misplaced" was a "poor choice of words." He stated the evidence was still in the locker but had not been transported to the Texas Department of Public Safety ("DPS") lab. Simms said he had no reason to believe, based on his discussions with the Santa Fe Police Department, that the seized substance was ever outside a secure location within the police department.

During trial, Sergeant Hensley testified he removed the bag containing the substance from beneath the seat of the truck, placed it on the driver's seat and took a picture of it. He then secured it in the front seat of his patrol car. After Sergeant Hensley left the scene with appellant, he booked appellant into the jail and took the substance to the patrol room and tested it with a kit provided by the Santa Fe Police Department to verify the substance was methamphetamine. Sergeant Hensley testified that he followed procedure for packaging the substance to send to the lab by placing the case number, his initials, the suspect's name, and the date, on the envelope. The envelope was sealed and Sergeant Hensley put a circle around it with his initials and the date. This was done on March 16, 2012. Sergeant Hensley testified there was a change to the envelope since he initially sealed it. The DPS crime lab had opened the envelope on a side not taped, removed the substance, tested it, placed the substance back in the envelope, and resealed the envelope. DPS also added a label with a tracking number, the name of the agency submitting the substance for testing, the date submitted, and a bar code.

4

Sergeant Hensley opened the envelope, by cutting along the top, and took out a DPS crime lab submission form. Sergeant Hensley had retained a copy of the form he filled out and he was able to authenticate the form in the envelope by comparison. Sergeant Hensley then identified the substance in the envelope as the same substance he placed into the envelope to be sent to DPS. He testified the only alteration was by the DPS crime lab placing a series of numbers and a heat seal across the top of the plastic bag. DPS opened the bag on November 27, 2012, approximately eight months after Sergeant Hensley placed the substance in the envelope to be sent to DPS. Sergeant Hensley testified that during that time period, the substance was in the evidence locker at the Santa Fe Police Department. The evidence had not been logged out.

Sergeant Hensley testified on cross-examination that after he returned to the station and field-tested the substance, the substance was weighed and he secured the substance in the manila envelope. According to Sergeant Hensley the substance was logged into the evidence locker and dropped into a slot that goes into a secured room and the detective division is responsible for transporting the substance to be tested. Once the lab results are returned from DPS, Sergeant Hensley testified, he completes his supplemental report.

Amanda Ramos, a forensic scientist with the DPS, testified when evidence is received by the lab, it is given a unique case number and bar code. Ramos stated that she used the green evidence tape on the manila envelope to seal it after opening it. On the tape were her initials and the date she closed the evidence, November 27, 2012. Inside the manila envelope was a plastic bag with the DPS case number, exhibit number, her initials, and the date. The plastic bag had been heat-sealed. Inside that bag were eight smaller plastic bags. Four of those bags were sealed with evidence tape and those were the four that Ramos tested. The

5

case number, exhibit number, her initials, and the date they were sealed were on those four bags. The four bags that were tested contained 1.29 grams. Ramos testified that because the highest possible penalty is for more than one gram and it would not change the penalty, the other four bags were not tested. Ramos testified that other than the cutting of the bottom, there had been no tampering of the bag from when she put her original markings on it. Ramos confirmed the heat seal that she placed on the bag was still intact.

In this case, the State established, through the testimony of Sergeant Hensley, the substance seized from appellant's truck was the same substance tested by Amanda Ramos at the DPS lab. Although the substance was not sent for testing for eight months, the record does not reflect the bags containing the substance were tampered with during that time. Absent any proof of impropriety, and "[w]ithout evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App. 1997). When the State shows the beginning and the end of the chain of custody, any gaps in between go to the weight rather than admissibility, particularly if the chain of custody through to the laboratory is shown. *Gallegos v. State*, 776 S.W.2d 312, 315–16 (Tex. App.— Houston [1st Dist.] 1989, no pet.). As there was no evidence of tampering, any gaps alleged by appellant went to the weight of the evidence, not its admissibility. *See id.* We therefore conclude the trial court did not abuse its discretion in admitting the evidence. *See Caddell*, 123 S.W.3d at 727–28. Accordingly, appellant's first issue is overruled.

## AMENDMENT OF INDICTMENTS

In his second issue, appellant claims both indictments were not properly amended. The indictment in each case contained two enhancement paragraphs. The first paragraph erroneously stated appellant was convicted in cause number 02CR1180 in the *405th* District Court of Galveston County. The court of conviction for cause number 02CR1180 was the *10th* District Court of Galveston County. In each case, the State filed a motion to amend the indictment to correct the first enhancement paragraph and the trial court granted the motion.

Appellant relies upon the holding in *Ward v. State*, 829 S.W.2d 787, 794 (Tex. Crim. App. 1992), that the only effective means of accomplishing an amendment is by interlineation — the actual, physical alteration of the face of the charging instrument. In *Riney v. State*, 28 S.W.3d 561, 565–66 (Tex. Crim. App. 2000), the Court of Criminal Appeals overruled *Ward* and held physical interlineation is not the only acceptable means of effecting an amendment to an indictment. A written motion to amend the indictment containing the requested amending language, granted by the trial court, is sufficient to accomplish an amendment. *See Nwosoucha v. State*, 325 S.W.3d 816, 829 (Tex. App. — Houston [14th Dist. 2010, pet. ref'd), citing *Riney* 28 S.W.3d at 565 (indicating State's motion and trial judge's granting thereof constitute authorization of eventual amendment of charging instrument pursuant to Texas Code of Criminal Procedure article 28.10).

In each of these cases, the trial court's written order granting the motion to amend the indictment contains the requested amending language. We therefore conclude the indictments were properly amended and overrule appellant's second issue.

Having overruled both of appellant's issues, we affirm the judgments of the trial court.

/s/    Marc W. Brown
        Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).