In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00339-CR**
_____

**JASON BENJAMIN MILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-05-05638-CR**

**MEMORANDUM OPINION**

Appellant Jason Benjamin Miller was indicted for the offense of possession of a controlled substance—methamphetamine—in an amount of four grams or more but less than 200 grams, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(d). The indictment included two enhancement paragraphs alleging previous convictions for possession of a controlled substance with the intent to deliver or manufacture and for possession of methamphetamine. Miller pleaded "not

guilty," a jury found Miller guilty, found the enhancements true, and assessed punishment at imprisonment for thirty-five years. Miller now appeals his conviction, raising five issues. We affirm the judgment as reformed.

Evidence at Trial

Testimony of Deputy Willie Mayes

Deputy Willie Mayes, with the Montgomery County Sheriff's Office, testified that he encountered Miller while Mayes was "patrolling" and driving north on Highway 249. Mayes noticed that Miller "kind of did a double take and a triple take" when Miller saw Mayes, which Mayes took as a sign of nervousness about seeing the police. Mayes testified that Miller moved into the left lane in front of a white vehicle that had to put on its brakes and make an evasive action to avoid a collision with Miller's vehicle, and Mayes stopped Miller for an unsafe lane change. According to Mayes, the way Miller changed lanes was evasive or abrupt, and the lane Miller had been driving in was clear, and the other car had to put on its brakes. Mayes agreed that the Transportation Code does not specifically define "safely" in the context of a lane change. Mayes also agreed that he was speculating as to the reason the driver of the white car in the left lane applied the brakes and that he did not see the car's brake lights. Mayes recalled seeing the front of the white car point

2

downwards, which indicated to Mayes that the driver applied his brakes and which Mayes regarded as an evasive action.

According to Mayes, the first thing Miller said to Mayes after the traffic stop was "my bad[,]" which Mayes thought related to the unsafe or illegal lane change. Mayes testified that once he had stopped Miller, Miller exhibited "[e]xcessive nervousness, either hiding something or putting something away[,]" which aroused Mayes's suspicions:

> He was very nervous. Kind of like -- you know, just moving a lot. You know, twitching a little bit. And once the window was rolling down, I already knew at this point -- I had to keep my cool at this point because as soon as he let the window down, I automatically smelled a strong odor of marijuana, as soon as he let the window down.

Mayes further testified that the way Miller acted led Mayes to believe Miller was a methamphetamine user. According to Mayes, the smell of marijuana provided a reason to have Miller exit the vehicle and either detain Miller or search the vehicle.

Mayes called for backup, and Deputies Carpenter and Mittag responded, and Deputy Carpenter patted Miller down. Mayes testified that, during the pat-down, Carpenter asked Miller if he could pull out what was inside Miller's pocket, and Carpenter pulled out "a square block of crystal-like substance[]" that Mayes knew from his training to be methamphetamines. Mayes also testified that the officers found in Miller's vehicle a plastic container with a small amount of marijuana inside

3

it. In viewing photographs taken of Miller's vehicle, Mayes identified a torch lighter used to heat a spoon for use in injecting drugs; a razor or scalpel that could be used for cutting crack, cocaine, or methamphetamines; a syringe; and a pipe with probable marijuana residue. Mayes also identified a photo of a block of methamphetamines weighing almost twelve grams found in Miller's pocket, a baggie containing additional methamphetamine, and a baggie containing marijuana. In another photo exhibit, Mayes identified red baggies used "to sell and distribute." Mayes agreed that these items were seized as evidence by Deputy Carpenter.

Deputy Mayes agreed that his patrol vehicle had a dash cam video system and that State's Exhibit 2 was a copy of the video of the traffic stop that was made by his dash cam, and the video was admitted into evidence and published to the jury. As the video was played, the following exchange occurred:

Q. So what action, if any, does the white car take once the Defendant's vehicle comes over into the next lane?

A. They either have to brake or they have to switch lanes themselves.

Q. And what did the white vehicle do in this particular case?

A. They broke -- well, they braked.

Q. Can you describe that braking action for the members of the jury?

A. Sure. I am pretty sure you are pretty familiar, but whenever you brake or brake abruptly, the front end of the vehicle normally tends to -- I mean, I know like when you-all are driving, you are like don't slam

4

too hard, just get off the gas. Because it is obviously when somebody brakes or applies the brakes hard, the front end of the vehicle dives down when they have to make an abrupt stop or brake.

Q. And would you characterize that action as evasive action?

A. Correct.

Q. And would you believe that action to be unsafe?

A. Yes, sir.

Q. So in terms of your reasonable suspicion for a traffic stop, did you believe that there was a Transportation Code violation just committed?

A. Yes, which is switching lanes when unsafe.

Mayes agreed that at the time the traffic infraction took place, the white car was not visible on the video. Mayes also agreed that during his work, he sometimes observes things that are not "fully captured" by the vehicle dash cam video.

Testimony of Deputy Dimitri Carpenter

Deputy Dimitri Carpenter, a Deputy with the Montgomery County Sheriff's Office, testified that he assisted Deputy Mayes upon arriving at the traffic stop when Mayes called for assistance. Carpenter testified that he could smell "a hint of weed in the car[,]" and Carpenter patted Miller down and searched him because of the smell of marijuana. Carpenter testified that when he approached the vehicle, he observed Miller in the driver's seat, reaching behind the passenger seat. Upon searching Miller, Carpenter found "a rock of methamphetamine[]" in Miller's

5

pocket, which Carpenter placed into an evidence locker. According to Carpenter, he handed the bag of what he believed to be drugs to Deputy Mittag, who subsequently returned the bag to him. Carpenter recalled that Deputies Mayes and Mittag weighed the methamphetamine while Carpenter inventoried Miller's vehicle, and the bag was out of Carpenter's eyesight for a time while he was conducting the inventory and while Mayes and Mittag were testing the substance. Carpenter testified that he placed the substance in a bag at the scene but did not seal the bag until the officers got back to the office. Carpenter agreed that the bag of methamphetamine admitted into evidence as State's Exhibit 28 was later sent to a laboratory for analysis.

Testimony of Cristina Muko

Cristina Muko, a forensic scientist with the Texas Department of Public Safety, testified that she performed testing on the sample that was admitted as State's Exhibit 28. Muko identified State's Exhibit 28 and described her procedure:

> My label not only includes the case number, but it also includes my initials, the date I opened it, as well as the item number. And once I am finished with my analysis, I then heat seal the bag and place my initials and the date that I finished the analysis.

According to Muko, she completed her analysis on June 19, 2018. Muko testified that her analysis determined that the substance was methamphetamine in an amount of 11.12 grams. Muko's lab report was admitted into evidence as State's Exhibit 29, and the report identifies the substance tested as 11.12 grams net weight of a

6

crystalline substance containing methamphetamine. The report also identifies the suspect in the case as Jason Miller with a birthdate of April 9, 1975, an offense date of April 28, 2018, and a Montgomery County case number of 18-A-115394. On cross-examination, the following exchange occurred:

> [Defense counsel]: Okay. So -- and this substance, would you agree with me, is it one piece or multiple pieces?
>
> [Muko]: It is in a little bit broken up bits and pieces.
>
> [Defense counsel]: Okay. Because, I mean, it is a crystalline substance, correct?
>
> [Muko]: That's correct.
>
> [Defense counsel]: So is it possible that some of that crystalline substance or some of those other pieces are not methamphetamine? Or do you know?
>
> [Muko]: I suppose it could be possible that some of it is not.
>
> [Defense counsel]: Because you only test .01 grams of that, correct?
>
> [Muko]: That's correct.

Muko testified that an evidence envelope initially goes to DPS evidence technicians, that she places a label on the envelope when she has completed her analysis and then an evidence technician returns it to the agency. According to Muko, all of the people who receive the evidence must initial a sticker on the envelope.

7

Miller's Testimony

Miller testified that he had previously been convicted for possession of a controlled substance in 2007, 2010, 2015, and 2017 and convicted of delivery of a controlled substance in 2012. Miller also testified that he is a "drug addict[]" and he has a problem with methamphetamine.

When asked about the day he was pulled over, Miller testified that he changed lanes because he knew an officer was behind him and Miller was trying to get out of the officer's way. Miller believed he changed lanes safely and stated:

> I was making a safe lane change. I put my blinker on and I got over like everybody does. . . . I was trying to get out of the cop's way. He was riding my rear. You know what I am saying? I was doing the speed limit and he was continuing to get closer to me. So I went ahead and put my blinker on and moved out of his way.

Miller did not notice whether the car he pulled in front of applied its brakes or whether the hood dipped down. According to Miller, he sat in his car for ten minutes after he was pulled over, and while he was sitting in his car, he smoked a cigarette and ate the ice cream he had just bought shortly before he was stopped. Miller testified that he did not give his consent to be searched. Miller testified that he works at an automobile collision repair shop and he uses the exacto knives found in his vehicle for work. According to Miller, the glass pipe that was found in his vehicle was a "P bowl[]" and he used it to smoke methamphetamine, and the baggies that

were found in his vehicle were for his ex-wife, who makes gems and jewelry. Miller testified "I do drugs[]" but he denied selling drugs.

## Issues

Miller raises five issues on appeal. He contends (1) the trial court erred in denying his motion to suppress, (2) the trial court abused its discretion in admitting certain evidence because the State had failed to prove up the chain of custody, (3) the trial court erred in denying his article 38.23 motion to instruct the jury regarding reasonable suspicion for the traffic stop, (4) the trial court erred in denying his request to include a lesser-included charge in the jury charge, and (5) the evidence was not legally sufficient to support the jury's finding of "true" to the alleged prior convictions used as enhancements.

## Motion to Suppress

Miller's first issue argues that the trial court erred in denying his motion to suppress because Deputy Mayes lacked reasonable suspicion to stop Miller. According to Miller, article 38.23 of the Texas Code of Criminal Procedure requires that evidence obtained in the search of his vehicle be suppressed because his detention and the subsequent search of his vehicle were not supported by reasonable suspicion and violated Miller's rights under the Fourth Amendment and the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. 1, § 9; Tex. Code Crim.

9

Proc. Ann. art. 38.23. Miller argues that Deputy Mayes admitted that the only reason to believe Miller made an unsafe lane change was because the white vehicle in the left lane slowed down, and Miller contends Mayes did not know if the white vehicle slowed down when Miller changed lanes, and that Mayes admitted the law does not say how many car lengths is considered a safe distance for changing lanes.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are

10

based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48.

When there are no findings of fact and none were requested, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 857). But when the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Traffic stops require an officer to have a reasonable suspicion that the person detained is, has been, or will soon engage in criminal activity. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The standard is whether, based on facts articulated by the officer and the totality of the circumstances, an objectively reasonable officer would have developed suspicion that an offense was in progress or had occurred. *Id.*; *Martinez v. State*, 500 S.W.3d 456, 465 (Tex. App.—Beaumont 2016, pet. ref'd) (citing *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005)). We review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

An unsafe lane change is a traffic violation. *See* Tex. Transp. Code Ann. § 545.060(a) ("An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."); *Dunn v. State*, 478 S.W.3d 736, 742 (Tex. App.—Fort Worth 2015, pet. ref'd); *Tyler v. State*, 161 S.W.3d 745, 748 (Tex. App.—Fort Worth 2005, no pet.).

In this case, Deputy Mayes testified during the hearing on the motion to suppress that when Miller changed lanes, the white car behind Miller in the left lane slowed down and applied the brakes to avoid a collision. Mayes testified that he saw

12

the front of the white vehicle point downwards when it braked, although Mayes admitted he did not see the brake lights. According to Mayes, if the vehicle in the left lane had to brake, then Miller's lane change into the left-hand lane was unsafe.

The trial court denied the motion to suppress. After trial, Miller filed a request for findings of fact and conclusions of law, but none were entered. We abated the case and remanded it to the trial court for entry of findings of fact and conclusions of law. *See Byram v. State*, 510 S.W.3d 918, 921 n.3 (Tex. Crim. App. 2017) ("On a motion to suppress evidence, a trial court must state its findings of fact and conclusions of law upon the losing party's request. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006)."). We received a supplemental clerk's record with the trial court's findings. The trial court entered the following findings of fact:

1. On July 9, 2018, the 221st District Court held a trial in the State of Texas v. Jason Benjamin Miller in Cause Number 18-05-05638.
2. Prior to trial, Applicant filed a Motion to Suppress and during the trial, evidence was heard on whether there was reasonable suspicion to stop Applicant's vehicle.
3. Outside the presence of the jury, the trial court heard testimony from Deputy Mayes, both cross-examination and direct examination, received exhibits, reviewed an in-car video and heard arguments of counsel.
4. After the hearing, the Court found that reasonable suspicion existed for the stop and that the subsequent investigation was proper.
5. Applicant, Jason Benjamin Miller was stopped on April 28, 2018 at about 6:59 p.m.
6. The speed limit was approximately 55 mph and Applicant's vehicle was estimated to be going 60 mph per Deputy Mayes.

7. Applicant was driving North on Hwy. 249 along with Deputy Mayes.
8. Another vehicle was driving in an adjacent lane near both Deputy Mayes' vehicle and Applicant's vehicle.
9. The other vehicle took evasive action when Applicant's vehicle changed lanes. Deputy Mayes testified that the other vehicle is not as visible on the recorded in-car video due to its location and since the camera is positioned to look forward.
10. Applicant was pulled over for making an unsafe lane change. Deputy Mayes testified that he told Applicant why he stopped him.
11. Applicant stated he made the unsafe lane change due to the officer being behind him and that law enforcement officers made him nervous.
12. Applicant made an admission to making an unsafe lane change and stated, "My bad," when asked about his driving.
13. Deputy Mayes testified that he smelled the odor of marijuana emanating from Applicant's vehicle during his interaction with Applicant.
14. Deputy Mayes testified he observed Applicant acting fidgety and twitching and that based on his experience and training Applicant appeared to be under the influence of some type of drug.
15. Deputy Mayes called for assistance from another officer for officer safety.
16. Deputy Mayes made the decision that it was not safe to allow Applicant to drive while under the influence of drugs.
17. The Court found that Deputy Mayes seemed to be credible and had no other controverting evidence.
18. After the hearing, the Court held that reasonable suspicion existed to make a traffic stop and conduct a further investigation after the deputy smelled marijuana.

In supplemental briefing, Appellant argues that although Mayes testified at trial that Miller was speeding, Mayes did not testify during the suppression hearing that Miller was speeding. Appellant further argues that "Appellant never said that he made an 'unsafe lane change[,]'" so that the trial court erred in finding that Appellant

14

admitted he made an unsafe lane change. The record of the suppression hearing reflects that Mayes testified that he told Appellant he had pulled him over for an unsafe lane change and Mayes testified that Appellant "basically admitted to making the unsafe lane change."

The trial court issued a finding of fact that Deputy Mayes testified that Miller made an unsafe lane change, and the trial court found Mayes to be credible. Based on the totality of the circumstances and deferring to the trial court's credibility determination in its findings of facts, we conclude that the evidence contains sufficient specific articulable facts, when combined with rational inferences from those facts, from which the trial court could have reasonably concluded that Deputy Mayes's initial detention of Miller was objectively reasonable, that Mayes had a good-faith suspicion that Miller had engaged in a traffic violation, and that probable cause existed to support the traffic stop. *See Crain*, 315 S.W.3d at 48, 52. We therefore conclude that the trial court did not err in overruling the motion to suppress. We overrule Miller's first issue.

## Article 38.23 Jury Instruction

Miller's third issue argues that the trial court erred in denying Miller's motion to instruct the jury that, if they found that the Appellant did not violate the law, then they would not be able to consider the rest of the evidence. Miller argues that his

15

request for an article 38.23 jury instruction was based on "the fact that the evidence presented by the State showed that Deputy Mayes did not have reasonable suspicion" for the traffic stop of Miller. According to Miller, because the trial court erred in determining that the State's case-in-chief presented no disputed fact evidence, he was "forced" to give up his right not to testify in order to affirmatively contest the State's evidence. Miller argues that he testified concerning prior convictions, and that evidence of these convictions would not otherwise have come into evidence. The result, according to Miller, is that the jury had to choose whether to believe Deputy Mayes or a "convicted felon," which constitutes reversible harm.

The day trial began, Miller requested a jury instruction pursuant to article 38.23 that stated

> . . . you may consider evidence obtained by Deputy Willie Mayes and/or Deputy Dimitri Carpenter as the result of his detention and arrest of the defendant if you first find beyond a reasonable doubt that the defendant's warrantless detention and arrest were permitted by the laws and Constitutions of this State and the United States; but if you do not so find beyond a reasonable doubt, then you will disregard any such evidence and not consider it for any purpose.

At the conclusion of the State's case-in-chief, Miller asked the trial court to rule on his requested jury instruction regarding reasonable suspicion for the stop and explained that his decision whether to testify depended on the trial court's ruling. The trial court denied the requested instruction, indicating that there was no

16

affirmatively-contested factual issue for the jury to resolve. The trial court also stated:

> I do think that the officer appeared to be credible. And one of the reasons why I think that is so, is during your cross-examination, he could have been very adamant. But he said -- he gave it to you and said, look, I didn't see his brake lights, I saw the car go down, I was beside him, I wasn't behind him. So it is not like he appeared to be bolstering his testimony.
> . . . .
> . . . And so I have to go on what the witness says if I believe the witness and do I think that you have done enough to reach that affirmative defense requirement. And I don't think at this time that you have. So I am going to deny your motion.

The court stated that the defense could establish a disputed fact issue through the testimony of a bystander witness or cross-examination. The trial court also explained that it did not believe the defense had met the requirement of an affirmative defense at that time, but the court told the defense it could reurge its motion after presenting its case. Miller subsequently testified that he believed he changed lanes safely. After Miller testified, he renewed his motion, and the trial court included the requested instruction in the jury charge.

Article 38.23 provides that evidence obtained in violation of the laws or Constitution of the United States or Texas may not be admitted in a criminal case. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). A jury instruction should be submitted if a fact issue arises about whether such a violation occurred. *See id.*; *Hamal v. State*,

17

390 S.W.3d 302, 306 (Tex. Crim. App. 2012). The instruction requires the jury to disregard evidence that it finds was obtained in violation of the Constitution or laws of the United States or Texas. Tex. Code Crim. Proc. Ann. art. 38.23(a); *Hamal*, 390 S.W.3d at 306. Three predicates are required for a defendant to be entitled to an article 38.23 jury instruction: "(1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *Hamal*, 390 S.W.3d at 306 (citing *Spence v. State*, 325 S.W.3d 646, 653-54 (Tex. Crim. App. 2010); *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008)); *see also Hernandez v. State*, 533 S.W.3d 472, 482 (Tex. App.—Corpus Christi-Edinburg 2017, pet. ref'd).

A jury instruction is proper "only if there is a contested issue of fact about the obtaining of the evidence. . . . There is no issue for the jury when the question is one of law only." *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000) (citing *Bell v. State*, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996)). The Court of Criminal Appeals has explained,

> [i]f there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the

18

evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Madden v. State*, 242 S.W.3d 504, 510-11 (Tex. Crim. App. 2007) (internal citations omitted). The reasonableness of an officer's suspicion that a traffic violation occurred is a legal issue to be resolved by the court, and not a fact issue. *See Robinson v. State*, 377 S.W.3d 712, 720-22 (Tex. Crim. App. 2012); *Madden*, 242 S.W.3d at 513.

According to Miller, in its case-in-chief, the State did not present evidence sufficient to support reasonable suspicion because Mayes admitted the law does not define an unsafe lane change as one where a driver is required to brake, that both his vehicle and the white car were about the same distance from Miller's vehicle, and that he did not know why the driver of the white car applied the brakes. On the record before us, we cannot say the trial court erred in concluding that the State's case-in-chief included no affirmative evidence that put the existence of a material fact into question and in denying the request for an article 38.23 jury instruction. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a); *Hamal*, 390 S.W.3d at 306; *Madden*, 242 S.W.3d at 513. Because we find no error in denying the instruction, we need not examine harm. *See* Tex. R. App. P. 47.1. We overrule Miller's third issue.

19

Chain of Custody

In his second issue, Miller argues that the trial court abused its discretion in admitting "State exhibits #26 (a pack of red baggies), exhibit #27 (a pipe), exhibit #25 (marijuana that was allegedly on Appellant's possession) and exhibit #28 (methamphetamines that were allegedly on Appellant's possession)." According to Miller, these exhibits were admitted through the testimony of Deputy Mayes and Mayes did not seize the evidence, tag and number the evidence, or log the items into evidence. Miller also argues that the analyst who testified about the evidence did not receive the evidence directly from law enforcement but from another technician. Miller argues that the evidence was inadmissible because the State failed to prove a chain of custody, that admission of the evidence prejudiced him, and that a limiting instruction would not have been sufficient to prevent harm.

An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) (citing *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

20

Even if the trial court erred in overruling Miller's objections, we will not reverse the judgment if the error was harmless. *See* Tex. R. App. P. 44.2. We will disregard non-constitutional error that does not affect a criminal defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). In our determination of whether error adversely affected the jury's decision, we consider everything in the record, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire. *Id.*

Circumstantial evidence may be sufficient to prove the chain of custody. *See Cain v. State*, 501 S.W.3d 172, 175 (Tex. App.—Texarkana 2016, no pet.); *Watson v. State*, 421 S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd). "Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *see also Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Gallegos v. State*, 776 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, no pet.). When the State shows the beginning and the end of a chain of custody, any intermediate gaps go to the weight rather than the admissibility of the evidence, particularly if the chain of

21

custody ends at a laboratory. *See Martinez*, 186 S.W.3d at 62; *Gallegos*, 776 S.W.2d at 315-16.

Deputy Carpenter testified at trial he found "a rock of methamphetamine[]" in Miller's pocket, which Carpenter placed into an evidence locker. Carpenter also recalled that he inventoried Miller's vehicle. Carpenter also agreed that the bag of methamphetamine admitted into evidence was the same one he retrieved from Miller and was later sent to a lab. Deputy Mayes agreed that the objected-to items of evidence were seized by Deputy Carpenter. Cristina Muko, who analyzed the drugs seized, testified that she received the bagged evidence from an evidence technician, who also returned the evidence to the law enforcement agency that sent it.

According to Miller, the evidence failed to prove "the beginning and end of a chain of custody" as required by *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd). However, the record includes no evidence of tampering, and any intermediate gaps between the initial seizure by law enforcement and analysis of the substance in the laboratory would go to the weight of the evidence and not its admissibility. *See Martinez*, 186 S.W.3d at 62; *Gallegos*, 776 S.W.2d at 315-16. Therefore, the trial court did not err in overruling Miller's objection about the chain of custody. Because we find no error in the admission of this evidence, we need not consider whether a limiting instruction would have prevented harm or

22

whether prejudice occurred. *See* Tex. R. App. P. 47.1. We overrule Miller's second issue.

Lesser-Included Offense Instruction

Miller's fourth issue argues that the trial court erred in denying his request for an instruction for the lesser-included offense of possession of a controlled substance less than one gram. Miller argues that Muko only tested .01 grams out of the total 11.12 of the substance submitted for testing, and that the substance was broken into pieces. Miller further argues that Muko admitted it was possible that other pieces of the substance were not methamphetamine. According to Miller, a rational juror could conclude that Miller possessed less methamphetamine than Deputy Mayes testified was in the plastic bags seized.

A two-step test determines whether a lesser-included offense instruction should be given to the jury. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). The first step requires the trial court to determine "whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Bullock*, 509 S.W.3d at 924. Where the requested offense is established by proof of the same or less than all the facts required to establish the offense charged, the first step is satisfied. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 37.09.

23

"The second step in the analysis asks whether there is evidence in the record that supports giving the instruction to the jury." *Bullock*, 509 S.W.3d at 924-25. Under this step, "a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* at 925. "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Id.* This step requires "examining all the evidence admitted at trial, not just the evidence presented by the defendant." *Id.* A defendant is entitled to the instruction on anything more than a scintilla of evidence, but "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.* When reviewing the trial court's ruling, we cannot consider "'the credibility of the evidence and whether it conflicts with other evidence or is controverted.'" *Id.* (quoting *Goad v. State*, 354 S.W.3d 443, 446-47 (Tex. Crim. App. 2011)). Accordingly, "'the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations.'" *Id.* (quoting *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)).

It is not sufficient that the evidence merely raises the possibility of the lesser offense; to be entitled to an instruction on a lesser-included offense, the evidence must establish the lesser offense as a valid rational alternative to the charged offense. *See Wesbrook v. State*, 29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000); *see also Creel v. State*, 710 S.W.2d 120, 133 (Tex. App.—San Antonio 1986) (holding trial court did not err in denying lesser-included offense charge where inferences and conjectures appellant categorized as "some evidence" amounted to nothing more than "a mere surmise or suspicion of the existence of the fact sought to be established") (quoting *Joske v. Irvine*, 91 Tex. 574, 582 (1898).

Miller argues that a lesser-included offense instruction was warranted because Muko did not test all of the substance seized and she admitted it was possible that untested pieces were not methamphetamine. In this case, the second part of the *Bullock* test is not met. *See Bullock*, 509 S.W.3d at 924-25. The term "controlled substance" includes "the aggregate weight of any mixture, solution, or other substance containing a controlled substance." *See* Tex. Health & Safety Code Ann. § 481.002(5); *see also Melton v. State*, 120 S.W.3d 339, 343-44 (Tex. Crim. App. 2003). The State is not required to test every rock to determine whether it contains methamphetamine. *See Melton*, 120 S.W.3d at 344. Muko testified that the weight of the crystalline substance she received was 11.12 grams. Her lab report states that

the net weight of the methamphetamine in evidence was 11.12 grams. There is no evidence the aggregate weight of the methamphetamine seized was less than 11.12 grams and consequently no evidence that would permit a jury to rationally find that, if Miller is guilty, he is guilty of possession of a smaller quantity of methamphetamine. *See Davis v. State*, No. 09-03-521-CR, 2005 Tex. App. LEXIS 6349, at **2-3 (Tex. App.—Beaumont Aug. 10, 2005, pet. ref'd) (mem. op., not designated for publication). The trial court did not err in refusing to instruct the jury on the lesser-included offense. Because we find no error, we need not consider harm. *See* Tex. R. App. P. 47.1. We overrule Miller's fourth issue.

## Prior Convictions as Enhancements

Miller's final issue argues that the jury erred in finding the enhancement paragraphs true because the State failed to prove that the judgments admitted into evidence were final and that no appeal was pending. According to Miller, without evidence of finality, the jury's finding that the enhancements were true was mere speculation and not sufficient for a finding beyond reasonable doubt.

"Once the State introduces [] prima facie evidence of a final conviction, the defense has the burden of proving that the conviction was not final." *Johnson v. State*, 583 S.W.2d 399, 403 (Tex. Crim. App. 1979) (citing *Ashley v. State*, 527 S.W.2d 302 (Tex. Crim. App. 1975)). If a judgment of conviction has been set aside,

vacated, or appealed, the burden is on the defendant to offer such evidence. *See Jones v. State*, 77 S.W.3d 819, 822-23 (Tex. Crim. App. 2002). If a defendant does not offer such evidence, then the State's prima facie proof is legally sufficient to prove a prior final conviction used as an enhancement. *See id.*

The indictment against Miller included two enhancement paragraphs—one alleging that he had been convicted in October 2012 of possession of a controlled substance with intent to deliver or manufacture in cause number 12-04-03986-CR, and another alleging that he had been convicted in June 2010 of possession of methamphetamine in cause number 1254503. The State offered into evidence certified copies of two judgments of conviction. State's Exhibit 34 was a Judgment of Conviction in trial cause number 12-04-03986-CR for possession of a controlled substance with intent to deliver or manufacture, entered October 11, 2012. State's Exhibit 36 was a Judgment of Conviction in trial cause number 1254503 for possession of methamphetamine, entered June 22, 2010. Both judgments reflect that Miller pleaded "guilty" to the offense charged. In addition, the State reoffered evidence from the guilt-or-innocence phase of trial during the punishment phase. During the guilt-or-innocence phase, Miller agreed that he was convicted of possession of a controlled substance in June 2010, and that in October 2012, he was convicted of delivery of a controlled substance.

On this record, the State provided prima facie evidence of prior final convictions, and Miller provided no evidence that the convictions were not final. Accordingly, the State's evidence was legally sufficient to prove the prior convictions used as enhancements. *See Jones*, 77 S.W.3d at 822-23; *Johnson*, 583 S.W.2d at 403. We overrule Miller's fifth issue.

### Reformation of Judgment

The written judgment of conviction in this case contains non-reversible clerical error. The judgment of conviction states that the "Plea to Enhancement Paragraphs[]" is "True[.]" However, Miller pleaded "not true" to the enhancements. This Court has the authority to modify the trial court's judgment to correct clerical errors. *See* Tex. R. App. P. 43.2(b) (providing that the court of appeals may "modify the trial court's judgment and affirm it as modified"); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993) (holding that the court of appeals has the power to reform judgments to correct clerical errors); *Torres v. State*, 391 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (modifying judgment to correct defendant's plea allegations in enhancement paragraphs). Accordingly, we modify the judgment to reflect that the "Plea to Enhancement Paragraphs[]" is "Not True[.]"

Having overruled all Miller's issues, we affirm the judgment as reformed.

AFFIRMED AS REFORMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 19, 2019
Opinion Delivered March 4, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.